UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JAMES L. COX,                          )
                                       )
                    Plaintiff,         )
                                       )
        v.                             )        No.  4:05CV103 FRB
                                       )
JO ANNE B. BARNHART,                   )
Commissioner of Social Security,       )
                                       )
                    Defendant.         )


MEMORANDUM AND ORDER

        This cause is on appeal for review of an adverse
determination by the Social Security Administration.  All matters
are pending before the undersigned United States Magistrate Judge,
with consent of the parties, pursuant to 28 U.S.C. § 636(c).

I. Procedural History

        On April 8, 2003, plaintiff James L. Cox filed an
application for Supplemental Security Income (SSI) pursuant to
Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq.,
in which he claimed a seizure impairment to have commenced in 1987.
(Tr. 35-38.)  On April 23, 2003, plaintiff filed an application for
Disability Insurance Benefits (DIB) pursuant to Title II of the
Social Security Act, 42 U.S.C. §§ 401, et seq., in which he claimed
he became disabled on January 1, 1997.  (Tr. 85-88.)[1]  On initial

_____

        [1]The Administrative Law Judge's written decision refers to
applications for benefits previously filed by the plaintiff which

- 1 -

consideration, the Social Security Administration denied plaintiff's claims for benefits. (Tr. 30-34 43, 68-71.) On January 13, 2004, a hearing was held before an Administrative Law Judge (ALJ). (Tr. 220-32.) Plaintiff testified and was represented by counsel. On June 10, 2004, the ALJ issued a decision denying plaintiff's claims for benefits. (Tr. 14-22.) On December 6, 2004, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 4-6.) The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II.  Evidence Before the ALJ

At the hearing on January 13, 2004, plaintiff testified in response to questions posed by the ALJ and counsel. Plaintiff is forty-eight years of age. Plaintiff stands five feet, ten inches tall and weighs 140 pounds. Plaintiff completed four years of college. Plaintiff is divorced and lives in a room provided by his former wife in her home. Plaintiff has one minor child. (Tr. 222-23.)

Plaintiff began working as a machinist in the manufacturing industry in 1979 and continued in such work until January 1997 when he was laid off. (Tr. 144, 223.) Plaintiff testified that he was unable to find work after that time. (Tr.

---

were denied by the Social Security Administration and not pursued further. (Tr. 17.) Such determinations are not before the Court for review.

223.)

Plaintiff testified that shortly after he was laid off from his employment, he sustained a fall which caused injuries to his left shoulder, elbow and collarbone. (Tr. 224.) Plaintiff testified that he has limitation of movement and aching pain about the affected areas. (Tr. 226.) Plaintiff testified that he takes no medication because he does not have insurance. (Tr. 227.)

Plaintiff testified that he suffers from seizures whereby he loses consciousness and awakens in the hospital. Plaintiff testified that he has had two or three seizures, but that he did not have one during the previous year. (Tr. 225.)

Plaintiff testified to a history of alcohol abuse and that he has maintained sobriety for the past two to three years. (Tr. 225.)

Plaintiff testified that he suffers from significant memory loss and sometimes gets lost while walking in his own neighborhood. (Tr. 226.) Plaintiff testified that he sometimes cannot remember things that happened as recently as half-an-hour prior and that he takes telephone messages by writing them down and then posting them near the telephone. (Tr. 229-30.) Plaintiff testified that he does not receive medical treatment for the condition because he has no insurance. (Tr. 226.) Plaintiff also testified that he has never been evaluated for the condition. (Tr. 229, 231.)

Plaintiff testified that he does not drive, and did not

do so even before his injuries. (Tr. 227.) Plaintiff testified that he sometimes does limited garden work during the summer, such as planting a couple of vegetable plants. Plaintiff testified that he currently watches his daughter's two children during the day, ages two and four, while his daughter attends school. (Tr. 227-28.) Plaintiff testified that his cooking consists of warming up food and that his housework consists of cleaning up after the children. (Tr. 228.)

Plaintiff testified that he lifts most things with his right arm but that he believed he could lift approximately ten pounds with his left arm. Plaintiff testified that he experiences no difficulty with sitting. (Tr. 228.)

At the conclusion of the hearing, the ALJ determined to order plaintiff to undergo a consultative psychological evaluation, with diagnostic testing, for plaintiff's memory condition. (Tr. 231-32.)

### III.  Medical Records

Plaintiff was admitted to the emergency room at St. Anthony's Medical Center on November 14, 1996, after having suffered a grand mal seizure apparently caused by alcohol withdrawal. (Tr. 176-95.) Plaintiff was admitted to the hospital whereupon he was administered Ativan[2] and, within twenty-four

_____

[2]Ativan is indicated for the management of anxiety disorders or for the short-term relief of the symptoms of anxiety or anxiety associated with depressive symptoms. <u>Physicians' Desk Reference</u> 3348 (55th ed. 2001).

hours, became calm and relaxed without evidence of tremor or hallucinations. Plaintiff was seen in consultation by Dr. Pevnick for alcohol abuse but became increasingly agitated, resulting in a transfer to the intensive care unit with marked confusion and belligerence believed to be associated with acute alcohol withdrawal. Upon increased and adjusted dosages of medication, plaintiff's condition improved. (Tr. 177.) Upon plaintiff's discharge on November 20, 1996, Dr. Donald Richardson diagnosed plaintiff with pneumonia; seizure, likely alcohol withdrawal and subsequent delirium tremens; long term alcohol abuse; thrombocytopenia, probably alcohol induced; and alteration of enzymes, likely due to seizures, delirium tremens, and alcohol. (Tr. 177-78.) Plaintiff was continued on Biaxin (an antibiotic) and was instructed to wean himself from Ativan and Clonidine.[3] Dr. Richardson noted that plaintiff would have further psychiatric medications as per Dr. Pevnick if indicated. It was noted that plaintiff would be seen in outpatient counseling. Plaintiff was instructed to follow up with Dr. Richardson in one month. (Tr. 178.)

X-rays taken of plaintiff's left knee on March 17, 1997, showed a comminuted, minimally displaced fracture of the patella. (Tr. 161-62.)

Plaintiff was admitted to the emergency room at St.

_____

[3]Clonidine is indicated in the treatment of hypertension. Physicians' Desk Reference 968-67 (55th ed. 2001).

- 5 -

Anthony's Medical Center on June 15, 1997, after having fallen due to a seizure and striking his head. Plaintiff's history of alcohol abuse and seizure disorder was noted. It was noted that plaintiff had episodes of remittance from drinking and that plaintiff's seizures were related to such episodes. Plaintiff was given Ativan and Dilantin[4] and was instructed to follow up with Dr. Richardson. (Tr. 164.)

On June 26, 2001, plaintiff was admitted to the emergency room at St. Anthony's Medical Center after having sustained a head laceration due to a fall. (Tr. 151.) Plaintiff reported that he had no memory of what happened. Emergency room personnel noted there to be a positive presence of alcohol. Plaintiff was advised to remain in the emergency room until his alcohol level decreased. (Tr. 157.) Plaintiff's history of seizure disorder was noted. X-rays were ordered to determine if plaintiff suffered a fracture to the left shoulder. (Tr. 153.) A sling was provided for plaintiff's left arm. (Tr. 158.)

On June 16, 2003, plaintiff underwent a consultative general medical evaluation for Disability Determinations. (Tr. 199-203.) Plaintiff reported that he fell down the stairs four years prior, fracturing his left shoulder, elbow and clavicle. Plaintiff reported that he continues to experience limitation of

_____

[4]Dilantin is indicated for the control of generalized tonic-clonic (grand mal) seizures. <u>Physicians' Desk Reference</u> 2427 (55th ed. 2001).

motion and pain in his left shoulder and elbow. Plaintiff also reported his history of seizures and that he takes no medication for the condition. Plaintiff reported that he has not had a seizure for two years. Plaintiff also reported that he becomes disoriented at times. (Tr. 199.) It was noted that plaintiff took no prescription medications. (Tr. 200.) Physical examination was unremarkable except for limited range of motion of the left upper extremity. (Tr. 200-03.) Grip strengths were noted to be normal. Dr. Cason concluded that plaintiff had obtained maximum recovery with his left shoulder and elbow and that plaintiff would have no further improvement in his range of motion thereof. Dr. Cason further concluded plaintiff to be seizure free, noting specifically, "Apparently, he had them, the way he describes, it would be an epileptic seizure and, of course, it would be associated with alcohol which he used to imbibe with heavily; he doesn't anymore. His last seizure was 2 years ago and he is not on any medications for it[.]" (Tr. 201.)

On June 13, 2003, plaintiff underwent a consultative psychological evaluation for Disability Determinations. (Tr. 204-08.) Plaintiff's medical history was noted, as well as plaintiff's complaints of memory loss. (Tr. 204.) Plaintiff reported to Dr. James D. Reid that he drinks beer and had three beers the previous day. (Tr. 205.) Upon mental status examination, plaintiff reported that he often becomes disoriented and loses his patience easily which Dr. Reid suspected to be associated with alcoholism.

Plaintiff reported having preoccupations which Dr. Reid suspected to be secondary to alcohol intoxication. Sensorium examination showed plaintiff's immediate and short-term memory to be intact. Remote and long-term memory likewise appeared to be intact. Plaintiff's current level of cognitive development was judged to be at the formal operational stage. Plaintiff's level of abstraction was noted to be abstract. Insight and social judgment were noted to be slightly limited. Plaintiff's concentration, persistence and pace were noted to be slightly impaired. (Tr. 206.) Dr. Reid's overall clinical impression was that plaintiff had alcohol problems. Dr. Reid diagnosed plaintiff with alcohol and nicotine dependence; personality disorder, not otherwise specified, with avoidant features; displaced shoulder, broken elbow, broken collar bone, seizures, and memory loss, by self report. Dr. Reid determined plaintiff to have psychosocial, environmental and economic problems, and assigned a Global Assessment of Functioning score of 70. Dr. Reid concluded that the examination suggested plaintiff to suffer from alcohol problems and a personality disorder. Dr. Reid recommended that plaintiff undertake a lifelong plan for sustained sobriety. (Tr. 207.) As to the effect of plaintiff's impairment upon plaintiff's ability to engage in work-related activities, Dr. Reid opined that plaintiff was slightly impaired in his ability to relate to others including fellow workers and supervisors, in his ability to socially interact, and in his ability to adapt and withstand the stresses and pressures

associated with day-to-day work activities. Dr. Reid further opined that plaintiff's ability to understand, remember and follow instructions and ability to maintain attention required to perform simple, repetitive tasks were within normal limits. (Tr. 207-08.) Finally, Dr. Reid opined that plaintiff was at risk to manage supplemental funds. (Tr. 208.)

On June 26, 2003, Dr. Charles A. Par, a reviewing, non-examining psychologist, completed a Psychiatric Review Technique Form (PRTF) for Disability Determinations in which he opined that plaintiff suffered from the medically determinable impairments of Personality Disorder and Substance Addiction Disorder, but that such impairments were not severe. (Tr. 94, 101, 102.) Dr. Par opined that such impairments caused no restrictions in plaintiff's ability to engage in activities of daily living, and only mild difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. Dr. Par finally opined that there were no repeated episodes of decompensation, each of extended duration. (Tr. 104.)

On February 3, 2004, subsequent to the hearing before the ALJ, plaintiff underwent a consultative psychological evaluation for Disability Determinations. (Tr. 209-13.) Chammie C. Austin, M.S., and Dr. Phyllis Terry Friedman noted plaintiff's medical history. It was noted that plaintiff's historical report as to his seizure activity was inconsistent but that it nevertheless showed plaintiff to have been seizure free since at least 2002. Plaintiff

reported that he drank a beer once or twice a week and that his previous consumption of alcohol had been greater. It was noted that plaintiff graduated from high school with mostly B and C grades, and graduated from college with a Bachelor of Arts degree in Administration of Justice. It was estimated that plaintiff's intellectual functioning had been in the high average range of functioning. Plaintiff reported that he was laid off from his work seven years prior as a result of a worsening economy and that he has not attempted to work since. Plaintiff reported that he is restricted in his activities because of his shoulder and elbow problems. (Tr. 210.) Plaintiff was administered the Wechsler Memory Scale-Third Edition (WMS-III), the Minnesota Multiphasic Personality Inventory (MMPI-2), Beck Depression Inventory (BDI-II), and a mental status examination. Upon the results of such testing, it was opined:

> Mr. Cox reported that his primary concerns center on his physical injuries as well as his experience of disorientation and memory loss. Mr. Cox reported historical and current difficulties with disorientation (which he clarified as including not remembering driving directions) and memory loss as well as a history of seizures. Performance on the WMS-III suggests, with most memory scores in the Low Average-Borderline range, support his subjective complaints of memory difficulty. Moreover scores are well below what would be predicted by his educational history (B.A. from UM-St. Louis). Consequently, he is diagnosed with Cognitive Disorder NOS.
>
> Mr. Cox also reported historical and current mood and vegetative difficulties. His mood

> appeared low during evaluation and this was
> consistent with his report.  In addition, Mr.
> Cox's scores on the MMPI-2 are consistent with
> persons who suffer from mood disorders,
> particularly depression.  Mr. Cox also
> reported low energy levels, middle insomnia,
> no sex drive, and difficulty concentrating and
> remembering information.  Given that Mr. Cox
> reported criteria suggestive a [sic] Major
> Depressive Episode during the initial years of
> his illness and does not meet DSM-IV criteria
> for a current Major Depressive Episode, Mr.
> Cox warrants a diagnosis of Major Depressive
> Disorder, In Partial Remission.

(Tr. 212-13.)

Plaintiff's current GAF score was determined to be 65.  (Tr. 213.)

In a Mental Medical Source Statement of Ability to Do Work-Related Activities, dated March 2, 2004, Ms. Austin and Dr. Friedman opined that plaintiff's mental impairment had no effect on plaintiff's ability to understand, remember and carry out short, simple instructions; nor on his ability to make judgments on simple work-related decisions.  It was opined that plaintiff was markedly restricted in his ability to understand, remember and carry out detailed instructions.  (Tr. 214.)  Ms. Austin and Dr. Friedman further opined that plaintiff's impairment resulted in no limitation upon plaintiff's ability to respond appropriately to supervision, co-workers and work pressures.  As to plaintiff's alcohol use, Ms. Austin and Dr. Friedman noted such use to have probably contributed to plaintiff's seizure activity, and that plaintiff's memory deficits may not be as severe with total abstinence from alcohol use; however, it was noted that plaintiff's

impairment was chronic.  Finally, Ms. Austin and Dr. Friedman noted that plaintiff would need assistance to manage benefits in his own best interest.  (Tr. 215.)

## IV.  The ALJ's Decision

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on July 31, 1997, and continued to meet them through September 30, 2002.  The ALJ also found that plaintiff had not engaged in substantial gainful activity since July 31, 1997, the alleged onset date of disability. The ALJ found plaintiff's history of left shoulder, elbow and clavicle fractures not to meet or medically equal an impairment listed in Appendix 1, Subpart P, Regulations No. 4.  The ALJ also found plaintiff's allegations of symptoms precluding all substantial gainful activity not to be credible.  The ALJ found plaintiff to have the residual functional capacity (RFC) to perform the physical exertion of work except for lifting more than ten pounds. The ALJ found there to be no non-exertional limitations.  The ALJ determined plaintiff unable to perform his past relevant work.  The ALJ found plaintiff to have the capacity to perform the full range of sedentary work.  Based on plaintiff's exertional capacity for sedentary work, his age, education and work experience, the ALJ found that 20 C.F.R. §§ 404.1569 and 416.969, and Medical-Vocational Rule 202.21, Appendix 2, Subpart P, Regulations No. 4 would direct a finding that plaintiff was not disabled.  The ALJ

thus concluded that plaintiff was not under a disability at any time through the date of the decision.  (Tr. 21-22.)

## V.  Discussion

To be eligible for Social Security Disability Insurance Benefits and Supplemental Security Income under the Social Security Act, plaintiff must prove that he is disabled.  <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001); <u>Baker v. Secretary of Health & Human Servs.</u>, 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  <u>See</u> 20 C.F.R. §§ 404.1520, 416.920; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant

is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities.  If the claimant's impairment(s) is not severe, then he is not disabled.  The Commissioner then determines whether claimant's impairment(s) meets or is equal to one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled.  At the fourth step, the Commissioner establishes whether the claimant can perform his past relevant work.  If so, the claimant is not disabled. Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If not, the claimant is declared disabled and becomes entitled to disability benefits.

The decision of the Commissioner must be affirmed if it is supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001).

To determine whether the Commissioner's decision is supported by substantial evidence, the Court must review the entire

administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

<u>Stewart v. Secretary of Health & Human Servs.</u>, 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The Court must also consider any evidence which fairly detracts from the Commissioner's decision. <u>Warburton v. Apfel</u>, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence. <u>Pearsall</u>, 274 F.3d at 1217 (citing <u>Young v. Apfel</u>, 221 F.3d 1065, 1068(8th Cir. 2000)). A Commissioner's decision may not be reversed merely because substantial evidence also exists that would support a contrary outcome. <u>Jones ex rel. Morris v. Barnhart</u>, 315 F.3d 974, 977 (8th Cir. 2003).

Plaintiff claims that the ALJ's decision is not supported

by substantial evidence on the record as a whole and, specifically, that the ALJ erred in his determination that plaintiff's mental impairments were not severe, and thus erred in his termination of his analysis of such impairments at Step Two of the sequential evaluation.  Plaintiff also argues that the ALJ's failure to consider plaintiff's mental impairments resulted in a failure to consider all of plaintiff's medically determinable impairments. Finally, plaintiff contends that the ALJ engaged in no rationale in determining plaintiff not to have any non-exertional impairments, and that the existence of plaintiff's cognitive impairments required the ALJ to obtain testimony from a vocational expert as to plaintiff's ability to perform work.  For the following reasons, plaintiff's arguments are well taken.

In addition to the five-step sequential process by which the Commissioner is to generally determine disability, the Social Security Regulations provide additional procedures for the Commissioner to undergo in evaluating mental impairments.  20 C.F.R. §§ 404.1520a, 416.920a.  First, the Commissioner must evaluate the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable impairment; and specify such symptoms, signs and laboratory findings substantiating the presence of such impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  The Commissioner then must determine the severity of the impairment.  To do so, the Commissioner is required to rate the degree of functional loss the

claimant suffers as a result of the impairment in the areas of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

> When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. . . .
>
> . . .
>
> If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe . . . .

20 C.F.R. §§ 404.1520a(c)(4)-(d)(1), 416.920a(c)(4)-(d)(1).

If the mental impairment is determined to be "severe," the Commissioner must then determine if it meets or equals a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). If the severe impairment does not meet or equal a listed mental disorder, the Commissioner then performs an RFC assessment. 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3). At the initial and reconsideration steps of the administrative process, the Commissioner must complete a standard document outlining the steps of this procedure. At the hearing and Appeals Council levels,

application of the procedure must be documented in the written decision. 20 C.F.R. §§ 404.1520a(e), 416.920a(e).

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2).

"These procedures are intended to ensure a claimant's mental health impairments are given serious consideration by the Commissioner in determining whether a claimant is disabled." Plummer v. Apfel, 182 F.3d 422, 432 (3d Cir. 1999). The Commissioner's failure to follow the appropriate procedure in determining the severity of a claimant's mental impairment requires a remand. Pratt v. Sullivan, 956 F.2d 830 (8th Cir. 1992); see also Hill v. Sullivan, 924 F.2d 972, 975 (10th Cir. 1991).

A review of the written decision in this cause shows the ALJ to have wholly failed to engage in the analysis required by the Regulations in making his determination that plaintiff's mental impairments were not severe. While the ALJ acknowledged that plaintiff had been diagnosed with personality disorder, cognitive

disorder and major depressive disorder-in partial remission,[5] his written decision is devoid of any discussion relating to what degree, if any, plaintiff is limited by such impairments in each of the functional areas set out in 20 C.F.R. §§ 404.1520a(c), 416.920a(c).  To the extent the ALJ found that Dr. Reid's consultative examination in June 2003 showed "no evidence of marked functional impairments," the undersigned notes that an impairment need not cause marked limitations to be considered severe.  Indeed, even moderate limitations an any area of functioning support a finding that the mental impairment is severe.  20 C.F.R. §§ 404.1520a(c), 416.920a(c).  In addition, while the ALJ summarized the findings made by Dr. Friedman from the consultative examination in February 2004, the ALJ concluded only that he "[did] not find that the claimant has significant memory difficulties.  He would be able to perform simple, repetitive work activities.  Furthermore, it is doubtful that the claimant would be entrusted to baby-sit his young grandchildren if his memory problems were severe." (Tr. 19.) This cursory conclusion fails to satisfy the Regulations' mandate that the ALJ make specific findings as to plaintiff's limitations in each area of functioning.

---

[5]This reviewing Court is unable to discern from the ALJ's opinion whether, in accordance with 20 C.F.R. §§ 404.1520a(b)(1), 916.920a(b)(1), the ALJ first determined these alleged mental impairments to be medically determinable impairments.  The undersigned notes, however, that in the PRTF completed in June 2003, Dr. Par found plaintiff's impairments of personality disorder and substance addiction disorder to be medically determinable impairments.  (Tr. 94, 101, 102.)

Contrary to the dictates of 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2), the ALJ's decision is devoid of any specific findings as to the degree of limitation in each of the functional areas described in the Regulations.  Because the failure to follow the appropriate procedure requires remand, see Pratt, 956 F.2d at 834, the cause should be remanded to the Commissioner to afford an ALJ the opportunity to properly make specific findings as to the degree of functional limitation plaintiff suffers as a result of his mental impairments in the areas of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.

The failure to properly evaluate plaintiff's mental impairments at Step Two of the sequential evaluation necessarily influenced the ALJ's analysis at subsequent steps inasmuch as the decision that plaintiff's mental impairments were not severe appears to have essentially removed such alleged impairments from further consideration.  See Pratt, 956 F.2d at 835-36.  As such, the undersigned is not in a position to determine whether such subsequent findings by the ALJ were erroneously made, including the ALJ's credibility determination and RFC assessment.  Id.  Likewise, a proper evaluation of plaintiff's mental impairments may influence the determination as to whether the testimony of a vocational expert is required to assist in the determination as to whether plaintiff can perform other work as it exists in the national

economy.  See 20 C.F.R. §§ 404.1545(e), 416.945(e) (in determining RFC, limiting effects of all impairments, even those that are not severe, are considered); Beckley v. Apfel, 152 F.3d 1056, 1059-60 (8th Cir. 1998) (while non-exertional impairments may not be severe enough to be considered disabling, they nevertheless should be considered by vocational expert in determining effect such impairments have on claimant's RFC) (depression is a non-exertional limitation); Baker v. Secretary of Health & Human Servs., 955 F.2d 552, 558 (8th Cir. 1992) (same) (non-exertional limitations include possible mental confusion and difficulty with memory).

Therefore, for all of the foregoing reasons, this cause should be remanded to the Commissioner for proper evaluation and documentation of plaintiff's mental impairments and their effect on plaintiff's claims of disability.  The Commissioner is reminded that in the event plaintiff's mental impairments are properly determined not to be severe, the effects of such impairments are nevertheless to be considered in determining plaintiff's RFC. Although the undersigned is aware that upon remand, the Commissioner's decision may not change after properly undergoing the required analysis in determining whether plaintiff's mental impairments are severe, see Pfitzer v. Apfel, 169 F.3d 566, 569 (8th Cir. 1999), the determination after proper analysis nevertheless is one which the Commissioner must make in the first instance.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and this cause is remanded to the Commissioner for further proceedings.

Judgment shall be entered accordingly.


_Frederick R. Buckles_
UNITED STATES MAGISTRATE JUDGE


Dated this _6th_ day of March, 2006.